Filed Nov. 28, 1883.

No. 9476.

THE CITY OF PERU v. GLEASON.

CITY.—Contract.—Legislative Power.—Drainage.—The power of a city to drain lands within or without its corporate limits is a legislative power, to be exercised or not at discretion, and such discretion can not be surrendered by contract with the owners of such lands.

The City of Peru *v.* Gleason.

SAME.—*Violation of Agreement to Construct Drain.*—*Damages.*—Within and adjoining a city was a tract of swampy land, injurious to the public, for the purpose of draining which the city contracted with G., a proprietor of a part of the swamp outside of the city limits, and other separate owners of parts of it within and without, whereby the city agreed to make a ditch within its limits, to serve as an outlet, and each proprietor to continue the same through his own tract. This would have rendered the swamp valuable. The city was authorized also to make lateral drains through the lands of G. and the others to intersect the principal one. G. and the other proprietors performed their agreement, but the city failed, and G. brought suit for breach of the contract, claiming damages in consequence of the injury to, and diminution in value of, his lands resulting from the fact that the water could not pass away. *Held,* that the city was not liable for such damages.

From the Miami Circuit Court.

*J. M. Brown* and *N. O. Ross,* for appellant.

*R. P. Effinger,* —— *Cole, W. B. McClintic, B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellee.

BLACK, C.—The appellee sued the appellant. A demurrer to the complaint, assigning as causes want of sufficient facts and defect of parties plaintiffs and defendants, was overruled, and this ruling is the first alleged error assigned.

The facts shown by the complaint were, in substance, as follows:

On the 22d of June, 1867, the appellee was the owner of a tract of land embracing seventy-five acres, in Miami county, and he was still the owner thereof at the commencement of this suit. Adjoining said tract on the west, one Daniel R. Bearss owned a tract; next on the west, Dema L. Tyner owned a tract; and next on the west said Bearss owned another tract. All said lands adjoined the northern corporate limits of the city of Peru. Next east of the appellee's said tract one Ebenezer P. Loveland owned a certain tract, north of and adjoining out-lot No. 19 in Godfroy's addition to said city, which out-lot was owned by one James M. Stutesman. From said out-lot Benton street, one of the streets in the eastern portion of said city, extends southward through said city to the Wabash and Erie Canal, which runs from east to

west through said city.   Said lands so owned adjoining the
northern boundary of said city were of a low, wet, swampy
and marshy character, a portion thereof being covered with
stagnant water during the greater part of the year.   A part
of the territory of said city, lying adjacent to said low lands,
was likewise low, wet, swampy and covered with stagnant
water; and said low lands within the city and so adjoining
it, in such condition, were highly prejudicial and injurious to
the health and comfort of the inhabitants of said lands and
of said city.   The natural slope of a portion of the territory
of the city, including its said low ground, is northward, and
the only natural and convenient outlet for the surface drain-
age thereof is over and through said low lands on the north.

On said 22d of June, 1867, said Bearss, Tyner, the ap-
pellee, Loveland, and Stutesman and the appellant executed a
contract, in writing, for the purpose of draining said lands
outside of the city and said territory within the city, by a
continuous ditch extending from a point on said most west-
ern tract thence eastwardly through said other tracts and said
out-lot, and thence down Benton street, so as to conduct the
water into the canal.   Said contract, which was made an ex-
hibit, was as follows:

"This memorandum of agreement, made this 22d day of
June, 1867, by and between the common council of the city
of Peru, Miami county, Indiana, in council assembled, of the
first part, and James M. Stutesman, Ebenezer P. Loveland,
Newell Gleason, Daniel R. Bearss and Dema L. Tyner, all
of the county and State aforesaid, of the second part, wit-
nesseth, that an agreement has this day been made and entered
into by and between said parties to drain the wet ground ly-
ing in the north and northeast portions of said city, and the
low lands of said parties of the second part, adjoining the
limits of said city, by the deepening and enlarging the ditch
now constructed on Benton street, in said city, from the
Wabash and Erie Canal northwardly, and the continuation
of said ditch from the northern terminus thereof, as here-

inafter provided, through the lands of said parties of the second part. For the purpose of effectually carrying out said agreement, the said party of the first part hereby agrees: *First.* To cut said ditch on said Benton street, along its entire length, about four feet deeper than it now is, of sufficient depth to insure the proper drainage of all the grounds herein contemplated, to a point on out-lot number nineteen, in the Godfroy addition to said city (said lot being now owned by said Stutesman, party hereto), where it shall intersect the natural channel of the water from the low lands aforesaid, and to slope the sides of said ditch at an angle of near thirty-three degrees, and of proper width on the bottom to effect the purpose herein contemplated; *Second.* The enlargement and deepening of said ditch on Benton street to be done at the expense of said city of Peru; the entire work of enlarging and deepening the same to be completed on or before the 1st day of August, 1867. And the said party of the second part agrees: *First.* To dig and construct a ditch corresponding in fall and proportionate in depth and dimensions with said ditch on Benton street, from the northern terminus of the same, angling through the out-lot of said Stutesman aforesaid, thence through the low lands of said Loveland, Gleason and Bearss, following as near as may be the natural channel of the water thereon, to a point on the Peru and Mexico turnpike road, at or near a small culvert or drain across the same, situated northwardly from the toll-house of said turnpike company, and thence westwardly through the low lands of said Tyner and Bearss to the summit,—on condition, and it is hereby understood by and between all the parties hereto, that each of the persons composing said party of the second part contracts for himself to dig and construct said ditch through his or her own lands, and neither of said persons shall be held liable for the failure of or violation of these agreements, or any part thereof, to said city, by any party other than himself or herself, it being understood that each of the parties of the second part is held liable as individuals to said city and to

each other. *Second.* Each of the persons composing said party of the second part binds himself, his heirs, executors, administrators or assigns, to grant a perpetual right to said party of the first part and their successors in office, to drain into said ditch at any point on his own land on the following terms and conditions, to wit: If the ditch for drainage as aforesaid shall be constructed along any street or highway leading or extending to said ditch herein contracted to be built, then the same may be left open; but if it shall run into said ditch through the private grounds of said parties of the second part, then it shall be sunk to such depth and covered so as not to interfere with the cultivation of the soil, provided that no ditch or drain shall be dug or so located as to interfere with or run under any building that may be situated on said lands; and provided, further, that the expense of digging, constructing and covering said ditches shall be paid by said parties of the first part. *Third.* That the expense of digging and constructing said ditch from its northern terminus on Benton street aforesaid, to the summit west of the Peru and Mexico turnpike, shall be paid by each of the parties composing said party of the second part through his own lands; and the said ditch shall be completed by the 1st of November, 1867; it being hereby agreed by all the parties of the second part that each will, in the order in which their lands lie with reference to said termination of the said ditch on Benton street, dig and complete their portion respectively in such proportionate period of time between the completion of the portion thereof by said city of Peru and the time above specified for its entire completion as the amount of work by them to be done shall compare with the whole amount to be done by said party of the second part, so as to enable all of the parties of the second part to complete said ditch by the time aforesaid. And it is further agreed by and between all of the parties hereto: *First.* That said ditch, along its entire length, shall be of uniform fall and proportionate width and depth, to be determined by the engineer of said city, and all of said

work to be done under his supervision and direction, provided that all proper expense attending such supervision and direction of so much of the same as is to be constructed by said parties of the second part shall be paid by them respectively. In witness whereof the said common council of the city of Peru has hereto affixed the corporate seal of said city and signed the same by the mayor thereof, and each of the other parties has hereunto set his hand and seal, the day and year first above written; and it is further agreed that the said parties of the second part shall keep the ditch through their premises free and open at all times, and that said parties of the first part shall also keep the ditch constructed by them free and open, so that the same, through its entire length, shall be in condition contemplated in its original construction for proper drainage."

It was alleged that said contract was entered into for the purpose of draining said outside lands and said territory within the city, and of benefiting, improving and protecting the health and comfort of the inhabitants of said lands and of said city; and that if said ditch had been constructed, extended, deepened and enlarged according to the stipulations of said contract, such purpose would have been attained. It was alleged that, at the proper time, the appellant began, and for a time said city prosecuted the work of enlarging said Benton street ditch; that the appellee and said other persons of the second part, relying on the covenants of the appellant, and being led by said acts of the appellant to believe that said city was about to perform said covenants and carry out the stipulations of said contract in good faith, entered upon, and in due time completed all the work to be by them, or either of them, performed under the terms of said contract, so that by the 1st of November, 1867, the appellee and said other persons of the second part had constructed, under the supervision of the engineer of said city, a continuous, open and unobstructed ditch from said summit on the land of said Bearss to said northern terminus of said Benton

street ditch, on said out-lot No. 19, complying in every re-
spect with the provisions of said contract; that the appellee
had performed all and singular the conditions of said con-
tract stipulated to be performed on his part; that afterward
the appellant abandoned the work of improving said Benton
street ditch before it had been enlarged and deepened ac-
cording to the terms of said contract; that the appellant had
wholly failed to complete said work according to the terms
of said contract; that the work performed by the appellant
on said Benton street ditch was so unskilfully, improperly
and insufficiently performed, that the banks of the same
caved in ; that the appellant permitted and still permits the
same to become and remain obstructed, so as to prevent the
flow of water through said ditch as stipulated in said con-
tract; that by the fault and negligence, as above set forth,
the flow of water from the lands of the appellee has been ob-
structed, and a large portion of said lands are thereby rendered
worthless and unfit for cultivation, and the health of persons
residing on and in the vicinity of said land is endangered
and impaired, and the whole of said property is greatly di-
minished in value, to the damage of the appellee, in, etc.

It is argued by some of the learned counsel for the appel-
lee, that while the ditch in question was a work to undertake
or not to undertake which was within the discretion of the
appellant, yet, having undertaken the work and having made
a ditch, the city was bound to so construct and maintain it
as not to injure others, and that the appellant is liable for in-
jury occasioned to the appellee by the faulty construction of
the ditch or the failure to keep it in proper condition.    But
this is not the case presented by the complaint.    No part of
the work done was undertaken or done by the city except
the enlargement of the Benton street ditch; the remainder
of the ditch made was undertaken and made by the appellee
and the other land-owners.    The Benton street ditch was an
artificial watercourse, conducting water from the lands of the

The City of Peru *v.* Gleason.

appellee and others situated outside of the city limits into and through the city to the canal. The appellee had no right to have his lands so drained in the first instance or to have such drainage thereof continued, unless he acquired such right under the contract, and his land has not been injured by the faulty construction or maintenance of the ditch. Waters have not been accumulated by the Benton street ditch and discharged therefrom upon the land of the appellee; nor have waters, which but for the work done by the city upon the Benton street ditch would flow off, been set back upon his land because of the manner in which that ditch has been constructed and maintained. Before the making of the ditch, his land was low, wet and swampy and unfit for cultivation. It is not shown that the water now collected upon his land came there by any act or omission of the appellant, or that there is more water than before the work was done, or that the unhealthiness has increased, or that the land is less productive. It is merely shown that the appellant has not provided a ditch sufficient for the drainage of his land. The complaint is that the ditch made by the city does not carry off all the waters that accumulate on the appellee's land, and he has therefore not been benefited to the extent to which he claims to be entitled under the contract; that the appellant has made a ditch on Benton street, but that, in the manner of its construction and maintenance, it does not constitute a sufficient performance of the appellant's contract duty. The action is upon the contract.

We deem it unnecessary to particularly examine the provisions of the statute for the incorporation of cities, as to their powers in relation to the construction of drains. Whatever powers are there expressly granted, or are to be inferred from the general provisions of the law, are to be exercised for the good of the city. Let it be admitted, for the purposes of argument in this case, that the appellant had authority to cause the making of the ditch in question through

the lands of the outside proprietors, and to pay for the making of the ditch through such lands by assessment upon the owners thereof, or to agree with such owners for the making of the ditch by them at their own expense; also, to contract with such owners for the right of way over their lands for such drains as might be made in the future from the city into the ditch so made by said owners, and to agree that the city would make such drains from the city at its own expense, and that the city might contract with owners of outside lands, to pay them out of the general funds of the city, for the right of way over such lands of drains made on such lands for the benefit of the city; also, that the city had the power to construct and keep in repair the ditch on Benton street, either at the expense of adjoining owners, or to be paid for out of the general fund of the city.

In the contract before us, the city was not to pay said proprietors anything for making the ditch through their lands, or for any right of way. The appellee and other land-owners were to make the ditch through their lands at their own expense, and to grant right of way over their lands into said ditch for drains from the city, to be made by the city.

What was promised by the city was to enlarge and deepen the ditch along Benton street, so that it, with the ditch to be made by the land-owners, would drain said wet lands. The ditch outside the city was made as stipulated in the contract. The city had caused the Benton street ditch to be improved, but not in the manner contracted for, and it had not been kept in good repair; and because of the faulty construction and maintenance of the ditch on Benton street, the water was prevented from flowing through it as stipulated in the contract, and the flow of water from the appellee's land was thereby obstructed. To show damage, it was alleged that a large portion of the appellee's land was thereby rendered worthless and unfit for cultivation, and that the health of persons residing on and in the vicinity of said land was en-

dangered and impaired, and that the whole of said property was greatly diminished in value, to the damage of the appellee in a certain sum.

The city could not make a binding contract to construct and keep in repair a ditch on one of its streets merely for the purpose of reclaiming and rendering valuable to the owner a parcel of land beyond the city limits.

The common council of a city has a continuing legislative authority to do such acts, within the corporate powers, as may be needed for the preservation of the health, comfort and welfare of the inhabitants of the city. It can not by contract surrender the future exercise of this discretionary power. The powers of the municipal corporation over its streets are held by it in trust, to be exercised for the public benefit on all proper occasions. They can not by contract be abandoned or impaired for the benefit of private persons. If the appellant has the power to make a drain to carry off surface water from beyond the city, it is because it determines that it will be for the promotion of the healthfulness and welfare of the city to do so. No authority can in this matter control the discretion of the council or reverse such determination. If, having made such a ditch, it keep it in such repair that it will continue to carry off waters from outside lands, it must be presumed that it does so because it still considers it to be beneficial to the city to do so. If it abandon such a ditch, and if it remain in such a condition that it does not benefit lands beyond the city limits which before such abandonment were incidentally benefited thereby, can the city be liable for the amount in which the owner of such lands would have been benefited if the ditch within the city had been kept in such condition that it would have rendered his land productive and innocuous, on the ground that the city had contracted to keep the ditch in such condition?

Suppose that after the city had appropriated one of its streets for such a purpose, and the experiment had been tried,

it should be found or determined by the common council, composed as when the contract was made or of different members, that it was positively detrimental to the health of the city to permit the waters from a marsh outside the city to flow through the city, could it through such a contract be prevented from protecting the city by obstructing the flow of water, on the ground that this rendered such outside land less valuable to its owner?

Suppose that the ditch as made and maintained by the city on Benton street were regarded by the common council as being of such capacity as to drain such outside land sufficiently for the preservation of the health and comfort of the inhabitants of the city, and that such drainage as would make said land productive would be injurious to the health of the city, could the city, because of such contract and the failure to make the ditch as therein stipulated, be required to pay the appellee the amount in which he would be benefited by a thorough drainage of his land?

It is not charged that because of the failure of the appellant to perform the contract the health or welfare of the city is impaired; and if this were true, it would be no ground of complaint for an individual; there would then be a failure to perform a duty to the public, to properly exercise official discretion.

The determination whether such outside lands are, or continue to be, a nuisance and injurious to the city, is a matter for the legislative determination of the common council. It can not surrender this power reposed for the public welfare. It may, therefore, at any time refuse to provide for this drainage, except to a certain extent deemed to be sufficient, or refuse to provide for it to any extent. The canal may, at some time, be wholly abandoned as a water-way through said city and be filled up. Benton street, or some portion thereof, may be vacated. In many ways it may become beneficial or necessary to abandon the outlet on Benton street. If the contract

The City of Peru *v.* Gleason.

is valid and may be enforced against the appellant for the incidental injury to the appellee, then the city can not abandon the drain within the city, though the council should determine that it is not needed for the welfare of the city, or that it is positively injurious to the health of the people to maintain it. If such is the effect of the contract, it constitutes a bargaining away of a right of judgment given to the council, to be constantly exercised for the welfare of the city. Therefore, the stipulation on the part of the appellant to make and maintain the Benton street ditch can not be enforced. Dillon Mun. Corp. (3d ed.), section 97, and authorities there cited; *Cone* v. *City of Hartford*, 28 Conn. 363; *City of Atchison* v. *Challiss*, 9 Kan. 603; *Driftwood Valley Turnpike Co.* v. *Board, etc.*, 72 Ind. 226, 242; *City of Indianapolis* v. *Indianapolis Gas-Light and Coke Co.*, 66 Ind. 396.

The city received no money or property from the appellee. He dug the portion of the ditch allotted to him in the contract upon his own land. What was the amount of his expense, or what was the value of the labor performed by him, is not alleged. His execution of this work is alleged by way of showing performance of the contract on his part, and not by way of showing his damage, which is set forth as being the diminution in the value of his land.

The question whether the appellee could recover, in any form of action, the amount of his expense, or the value of labor bestowed upon the ditch on his land, is not before us, and we will not lengthen this opinion by discussing it.

The appellee must be presumed to have known, at all times, that while the appellant had power to make and maintain a ditch on Benton street, such as was described in the contract, that is, a legislative power to do that for the failure to do which he makes complaint, yet the common council could not bind the city, as a party to a contract with the appellee, to make and maintain such ditch; and that, there-

fore, the city was not, by said contract, placed under obligation to him to make and maintain said ditch on Benton street.

He can not recover on the contract for the failure of the appellant to make and maintain said ditch as stipulated.

The demurrer to the complaint, for want of sufficient facts, should have been sustained.

PER CURIAM.—It is ordered; upon the foregoing opinion, that the judgment be reversed, at the costs of the appellee.

HAMMOND, J., did not participate in the decision of this cause.

Filed Nov. 28, 1883.