[Civil No. 3102.   Filed July 13, 1931.]

[1 Pac. (2d) 343.]

BOARD OF SUPERVISORS OF APACHE COUNTY, STATE OF ARIZONA, Consisting of BERT J. COLTER, BURR W. PORTER and J. ALBERT BROWN, Members of Said Board of Supervisors, Appellants, v. H. G. UDALL and DORINDA UDALL, His Wife, Appellees.

Mr. Dodd L. Greer, County Attorney, for Appellants.

Mr. J. Smith Gibbons and Mr. W. E. Ferguson, for Appellees.

Mr. John C. Gung'l, United States Attorney, *Amicus Curiae.*

LOCKWOOD, J.—H. G. Udall and Dorinda Udall his wife, hereinafter called plaintiffs, brought suit against Bert J. Colter, Burr W. Porter, and J. Albert Brown, as members of the board of supervisors of Apache county, hereinafter called defendants, alleging in substance that plaintiffs were taxpayers of Apache county, and that defendants were the supervisors thereof; that said defendants had attempted to enter into a contract with the United States of America through the Secretary of Agriculture, by the terms of which defendants were to secure at the expense of Apache county a right of way for a certain road to be constructed by the secretary, under the supervision and at the expense of the United States, and maintained by said United States for a term of two years, after which said road was to to be maintained indefinitely by Apache county to the satisfaction of the said secretary at an estimated cost of $300 per mile. It was further alleged that defendants had not either before or since the making of said contract adopted a budget for Apache county covering the expense of said right of way and maintenance of said road in accordance with their agreement, nor had they provided therefor from any other fund; that the road referred to was not a county road, but a federal road project, and that the terms of the respective defendants as supervisors would expire before the liability for the maintenance for the road as aforesaid would accrue. The prayer was that the defendants be enjoined from the acquiring of the right of

way aforesaid, or the expenditure of public money thereon, or doing anything that would in any way impose any liability on the taxpayers of Apache county by reason of such alleged contract.

The complaint was filed February 23d, a demurrer thereto was filed February 27th, and an outside judge was called to sit in the case. From that time the record shows a peculiar condition. Although no answer had been filed, the case was submitted to the court on the same day on a stipulation of facts. The next day the demurrer was overruled; the day after findings of fact and an opinion were signed by the trial judge at Holbrook, and transmitted to the clerk of the court at St. Johns. A motion for new trial was filed March 10th. The next day the opinion and findings were filed. March 15th the United States district attorney filed a document which reads in part as follows:

"Suggestion of the United States of America. Filed March 23, 1931.

"Comes now the United States of America, by John C. Gung'l, United States Attorney for the District of Arizona, who has heretofore been duly authorized by the Attorney General of the United States, appearing herein for the purpose of suggestion only, for the information of the Court, but explicitly refraining from submitting itself of any of its rights, property or policies to the jurisdiction thereof, does respecfully suggest to the Court, as follows: . . . "

On March 16th the clerk of the court gave notice of the filing of the opinion as provided by section 3697, Revised Code of 1928. The order overruling the motion for new trial was filed March 18th, while the clerk's minute entry of judgment on the opinion was made April 10th. The next day this appeal was taken. The reason for this rather unusual procedure is not shown, but in view of the presumption that public officers do their duty, we must assume some

great public necessity, not apparent on the face of the record, justified it.

It is first contended that the judgment is void as having been rendered on Sunday, March 1st. The legal judgment was the entry of the clerk, made April 10th. *Brewer* v. *Morgan,* 33 Ariz. 225, 263 Pac. 630; *Slaughter* v. *First Nat. Bank,* 34 Ariz. 26, 267 Pac. 416. This was on Friday. The fact that the trial judge signed his decision in Holbrook on Sunday has no bearing on the date of the judgment itself.

No motion or request was made by the Secretary of Agriculture or the United States for leave to intervene in the action at any time, so far as the record shows, but it is urged by defendants that since this case involves the determination as to the validity of a contract to which the secretary was a party, he was an indispensable party in the action. We have considered the question of parties in the recent case of *Oglesby* v. *Chandler,* 37 Ariz. 1, 288 Pac. 1034. Therein we say as follows:

"Parties to an action are divided into three classes: Proper, necessary, and indispensable. The difference between these three classes is well defined in the case of *Williams* v. *Bankhead,* 19 Wall. (86 U. S.) 563, 571, 22 L. Ed. 184. In that case the court says: 'The true distinction appears to be as follows: First. Where a person will be directly affected by a decree, he is an indispensable party unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. Secondly. Where a person is interested in the controversy, but will not be directly affected by a decree made in his absence, he is not an indispensable party, but he should be made a party if possible, and the court will not proceed to a decree without him if he can be reached. Thirdly. Where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter which may be conveniently settled in the suit, and thereby prevent

further litigation, he may be a party or not, at the option of the complainant.'

"Under our Code, the objection that there is a non-joinder of necessary parties must be taken by demurrer or answer, and, if not so taken, it is deemed to be waived. Section 3777; Revised Code of 1928. It is only when the parties are indispensable that the question may be raised in the appellate court. Was the board an indispensable party in this action?

"We think that a fair test is whether or not the judgment rendered herein would be *res adjudicata* as against the board in any action brought by or against it and involving any of the issues of this case."

It is obvious that in no sense does the judgment rendered herein run against the Secretary of Agriculture. It affects the defendants as supervisors of Apache county, and them alone. If the secretary should for any reason bring an action against the supervisors for a breach of their contract, the plaintiff in that action would have a right to have relitigated every issue of law and fact presented in the present suit. Of course, it might be that this court would as a matter of *stare decisis* follow the principles laid down in the present case, but it would not be bound to do so under the doctrine of *res adjudicata*. We think, therefore, that the Secretary of Agriculture was not an indispensable party to the action.

He was, however, both a proper and a necessary party, and had the question been raised by special demurrer or by answer, it would have been error for the trial court to refuse to allow him to intervene. Nay, more; had he asked permission to become a party at any time before March 18th (for before the motion for new trial was ruled on or the judgment rendered he had notice of the pendency of the action), and had the court refused to grant such request, or, having granted it, denied the motion for new trial, it would in all probability have been an abuse of discretion.

But although advised of the situation some time before March 18th, he made no request for intervention. The United States district attorney filed a mere "suggestion," which expressly stated that the United States (for which, of course, the Secretary of Agriculture was acting) did not submit itself to the jurisdiction of the court. Such being the case, we are of the opinion that the trial court did not err in overruling the motion for new trial on the ground that the secretary was either an indispensable or a necessary party.

We consider, then, whether or not the court erred in its decision on the merits. The contract, as a result of which this litigation arose, provided for the construction of a certain road by the Secretary of Agriculture, and then contained, among other clauses, the following (the "Cooperator" mentioned therein being Apache county):

"The right of way upon which to construct the said project will be procured by and at the expense of the Cooperator, except where the necessary right of way is upon Government lands, and the cost incidental thereto will be paid by the Cooperator. . . .

"The Secretary will repair and maintain the said project for a period of two years from the date of completion of the improvements out of federal funds to be made available.

"At the expiration of the above stated period of two years maintenance by the Secretary, the Cooperator will accept the project and from that time repair and maintain the same to the satisfaction of the Secretary without cost to the Secretary. It is estimated that to repair and maintain the project properly will require an annual expenditure of $300 per mile. . . . "

The following appeared in the stipulation of facts:

"It is further stipulated that the budget of the County of Apache, as adopted by the Board of Supervisors and under which they were acting at the time they entered into the contract above mentioned, con-

tained no provision and provided no fund or funds from taxes or otherwise for the acquiring of the right of way mentioned in the complaint herein, or any other right of way, nor for the improvement or construction of any new road or new highway in any manner whatsoever. . . .

"It is further stipulated, as set forth in paragraph No. 8 of plaintiffs' complaint, that no application has been made to the State Tax Commission to declare an emergency and authorize the Board to incur a liability therefor to be entered in the next year's budget. . . .

"That from the terms of said contract with the United States of America herein above referred to, it is a contract that will not and cannot be fully performed within the term of office of the Defendants, as members of, or as a Board of Supervisors. That their terms of office will expire on the 31st day of December, A. D. 1932, and that under the terms of said contract it is provided that the County of Apache will maintain said road, as herein above set forth, thereafter under the direction of the United States of America. . . .

"It is further stipulated that it is the intention of the defendants, the Board of Supervisors of Apache County, to proceed forthwith and acquire a right of way over and across the land described in said complaint, and to pay out of the funds belonging to the county of Apache for said right of way as soon as the same has been appraised and condemned, and that the Bureau of Public Roads of the Federal Government acting under said contract had actually commenced work on said road and on the land in said complaint described, and are at the date hereof proceeding with said work. . . . "

It was also stipulated that paragraph 6 of the complaint, which contained an allegation that the road in question was not a county road, but a federal aid project, was true. The facts may therefore be summarized as follows:

The Secretary of Agriculture entered into a contract with defendants as supervisors of Apache

county, whereby the county was to provide a right of way for a certain federal aid project which was not a county road, which the secretary was to construct and maintain for two years at the expense of the federal government, after which time the county was to accept the project and repair and maintain the same indefinitely to the satisfaction of the secretary, at a cost estimated at approximately $300 per mile. No provision had been made in the budget of the county for funds to be used in acquiring the right of way mentioned in the complaint, the maintenance of the road later, nor, indeed, for the improvement or construction of any new road or highway in any manner whatsoever, and the contract of maintenance was a continuous one, extending far beyond the current fiscal year, and the terms of any or all of the supervisors then in office.

The real question before us is as to the power of a board of supervisors to enter into a contract of the nature described and to expend public funds in furtherance thereof. The only powers possessed by boards of supervisors are those expressly conferred by statute or necessarily implied therefrom. *Kenney* v. *Bank of Miami,* 19 Ariz. 338, 170 Pac. 866; *Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837; *Bone* v. *Bowen,* 20 Ariz. 592, 185 Pac. 133; 15 C. J. 457. We must then examine the statutes to find what powers boards of supervisors have in connection with matters such as those above set forth.

There are two provisions of the Code which, it is claimed by defendants, confer such authority. It is first urged by them that contracts of this nature are expressly authorized by section 1714, Revised Code of 1928, which reads in part as follows: "The commission may enter into cooperative contracts and agreements for the construction of roads with the secretary of agriculture of the United States, under and in accordance with the provisions of any act of congress,

and as to such contracts the provisions relating to the methods of expending funds derived from the sale of such bonds shall not apply, and any money in the county treasury subject to the disposition or control of the said commission required under such contract or agreement shall, upon the order of the commission be deposited by the county treasurer in a United States depository designated by the secretary of agriculture or other officer of the United States authorized by law to enter into such contracts, to the credit of and to be expended by such officer under the terms of any such contract." But on examining the entire section, together with those which precede it, it appears clearly that the power granted therein only exists in cases where county bonds have been issued according to law for the construction and improvement of certain roads under the circumstances set forth in sections 1709–1713, Revised Code of 1928, and it is apparent that the road covered by the contract in question is not one of this character. Section 1714, *supra,* is not authority for the board of supervisors to make the contract under consideration.

The other provision which it is claimed gave defendants the authority to make the contract is subdivision 4 of section 774, Revised Code of 1928, which reads as follows: "Section 774, Powers of board enumerated. The board of supervisors, *under such limitations and restrictions as are prescribed by law,* may: . . . 4. lay out, maintain, control and manage public roads, ferries and bridges within the county and levy such tax therefor as authorized by law. . . . " (Italics ours.) By its own terms this section is to be read in connection with all other provisions of the Code. It will be observed that the power of the supervisors under this section is confined to "public roads, ferries and bridges within the county," and since the power includes the control and management of such roads, we think it but reasonable to assume

that the public roads referred to therein must be public *county* highways, as distinct from state or federal highways, or other public roads, which cannot be controlled or managed by the supervisors. In the case of *Territory* v. *Richardson,* 8 Ariz. 336, 76 Pac. 456, we considered paragraph 3972, R. S. Civil Code of 1901, in conjunction with paragraph 3956 of the same Code, and held that the only· public highways in Arizona were such as were established in accordance with the express provisions of the statutes. In the case of *Champie* v. *Castle Hot Springs Co.,* 27 Ariz. 463, 233 Pac. 1107, we reaffirmed the Richardson case, and held in substance that there was then but one legal method whereby the supervisors could establish county public roads, being that set forth in paragraph 5057, R. S. Civil Code of 1913, which was a re-enactment of paragraph 3972, *supra.* Since the decision of the Champie case, however, the statute has provided another method of establishing public highways to be known as "state routes" and "state highways." This is done by the state highway commission, and when a "state route" is established by it, it becomes for the purposes of construction and maintenance, but not alteration or abandonment, a county highway until declared a "state highway" by the commission. Sections 1567, 1568, Rev. Code 1928. See, also, *County of Apache* v. *Udall, ante,* p. 488, 1 Pac. (2d) 340, just decided. But the only method even now, by which county boards of supervisors may establish, alter or abandon highways, is found in section 1701, Revised Code of 1928, which is in substance a re-enactment of paragraphs 3972 and 5057, *supra.*

We conclude, therefore, that boards of supervisors have no right to spend county funds on any road except a county public highway or state route, established as provided in section 1701, *supra,* or its predecessors in time, paragraphs 3972 and 5057, *supra,* or as provided in sections 1567, 1568, *supra,* and then

only when such highways are under the exclusive control and management of the supervisors at all times. The complaint states that the road in question is not a county road, and the stipulation of facts admits this to be true. And while it may be that under some circumstances courts take judicial notice of certain facts in regard to a public road system, we are of the opinion that we certainly cannot take judicial notice that even if the original road from Springerville to Nutrioso is a legal county road or state route, the very different road involved in this action is also one. The map submitted by counsel for defendants in their brief itself shows changes from the old road. When a county highway or state route is once established according to law, any alteration therein must also be made in the statutory manner, and it is not suggested this was done.

Further, the contract binds Apache county to maintain the road indefinitely "to the satisfaction of the Secretary of Agriculture." The statutes give the supervisors of a county the right to abandon county highways under the circumstances and in the manner provided in section 1701, *supra*. We are of the opinion in the absence of express statutory authority they may not contract away this right and the contract is void for this reason also. *City of Peru* v. *Gleason,* 91 Ind. 566; 44 C. J. 73. If, on the other hand, the road be a state route, the supervisors certainly cannot bind themselves to maintain perpetually a road which may be removed from their jurisdiction at any time by the highway commission.

We might well rest our decision on what we have already said, but since another question is raised which may become important at a later time, we think it best to pass on it also.

It appears from the stipulation of facts that no money was provided in the annual budget of Apache county for the acquiring of the right of way men-

tioned in the complaint herein, or of any other highway, or for the construction or improvement of any new road or new highway. There can be no question that the expenditure by boards of supervisors for the construction and maintenance of highways is as much under the control of the so-called "Budget Law" (Laws 1921, chap. 52) as any other portion of county expenditures. *Bank of Lowell* v. *Cox*, 35 Ariz. 403, 279 Pac. 257. Such being the case, no expenditure can be made, nor can any future indebtedness be incurred for any purpose not provided for in the budget, unless the funds to cover such indebtedness are already on hand. It is stipulated that the expenses required by the contract in question were not provided for in the budget, but it does not appear from the stipulation whether or not Apache county had on hand any funds not protected by the Budget Law and available for the purposes of this contract. Paragraph 5 of the complaint alleges that the board of supervisors "have in no way provided therefor from any other fund; and . . . it is the intention of Defendants to levy a tax for the purpose, . . . " and in the absence of proof to the contrary or a denial thereof by answer, we must assume it was admitted by defendants. This, we think, in substance is an allegation that no funds were on hand legally available to pay the indebtedness incurred by the contract within the meaning of our decisions in the budget cases. *Bank of Lowell* v. *Cox*, *supra; Batterton* v. *Pima County*, 34 Ariz. 347, 271 Pac. 720; *Automatic R. M. Co.* v. *Pima County*, 36 Ariz. 367, 285 Pac. 1034.

While the general rule is that supervisors cannot make contracts which will not be completed during their term of office, this is not always true, if necessity and public policy require otherwise. *Olmsted & Gillelen* v. *Hesla*, 24 Ariz. 546, 211 Pac. 589; *Liggett* v. *Board of County Commrs.*, 6 Colo. App. 269, 40 Pac. 475. But if a contract is of such a nature that

the obligation incurred thereby on behalf of the county will violate the provisions of the Budget Law by creating an indebtedness which cannot be met legally under the terms of the budget or by other funds on hand already, such contract is void, not necessarily because of the length of time which it runs, but because of the prohibition against the incurring of the indebtedness.

Since it appears that the highway in question was not a public county highway under the exclusive control and management of the board of supervisors of Apache county at the time this suit was brought, they were without authority to expend then any public money thereon by securing a right of way therefor, and since the contract provided for the incurring of a future indebtedness without funds being legally available to meet it, and surrendered their statutory discretion as to a future alteration or abandonment of the road, they could not bind themselves for its future maintenance even were it to become a county highway at the end of two years.

Much stress has been laid by defendants on the tremendous loss which it is alleged will accrue not only to Apache county, but to many other counties within the state of Arizona if we hold supervisors are without the power to make contracts of this nature, by reason of the stoppage of federal road aid which they say will occur. Were the matter one on which we were authorized to legislate, we might perhaps inquire as to whether or not the benefits to be gained by securing federal funds in this manner outweighs the injury which would be done the taxpayers of the state by breaking down the protection of the Budget Law. But that is not a matter which we can consider in determining the issues of law which have arisen. As was said by this court in the case of *Bone* v. *Bowen, supra:*

"It may be that the county will suffer great financial loss because the highway commission and the board cannot carry out the plan evolved, after much thought and investigation, by men confessedly actuated by the highest and best motives, and for the sole good of the county. However that may be, we must all yield to the law as drawn and enacted by the legislature. If the law needs to be changed in the interest of economy or efficiency, the body to do that is the legislature and not the courts. The fact that the scheme for road construction submitted by the agents of the county is or may be a money-saver to the county and a better scheme than the one provided for by the legislature will not justify its adoption by such agents, and much less can the court—whose duty it is to construe the laws and not to make them—by its solemn judgment, sanction such a course."

The legislature of Arizona has limited the authority of boards of supervisors so they cannot make contracts for the expenditure of county money on any but county roads, and not even then, if such expenditure involves a violation of the principles laid down in the Budget Law. If any change is to be made in this policy, it must come from the legislature, and not from the courts.

The judgment of the superior court of Apache county is affirmed.

McALISTER, C. J., and ROSS, J., concur.