311 P.2d 829

Grover J. DUFF, William P. Copple, James R. Heron, F. L. Christensen and Milton Reay, as members of and constituting the Arizona State Highway Commission and William E. Willey, the Arizona State Highway Engineer, Petitioners,

and

Peter Kiewit Sons' Co., a Nebraska corporation, Intervenor,

v.

Jewel W. JORDAN, individually, and as Arizona State Auditor, Respondent.

No. 6411.

Supreme Court of Arizona.

May 14, 1957.

Robert Morrison, Atty. Gen., for petitioners.

Rawlins, Davis, Christy, Kleinman & Burrus, and Peter Kiewit, Jr., Phoenix, for intervenor.

R. G. Langmade, Phoenix, for respondent.

WINDES, Justice.

The Arizona State Highway Commission and William E. Willey, its engineer, petitioned for writ of mandamus against Jewel W. Jordan, individually and as state auditor. We issued alternative writ and because an emergency existed, we by minute entry ordered the alternative writ be made peremptory with opinion to follow.

The state legislature regularly convened in January, 1956, appropriated for the fiscal year of July 1, 1956 to July 1, 1957, exclusively for the construction of state highways any balances and collections in the state highway fund in excess of certain specific appropriations. In June, 1956, the state highway commission adopted a construction and rights of way budget in the aggregate amount of $40,915,500 for the ensuing fiscal year as required by the provisions of A.R.S. § 18–135. Included therein was a construction project (Item 95, page 16) known as the Mule Pass Tunnel and a contemplated expenditure therefor in the sum of $1,475,000. In January, 1957, pursuant to advertisement and bids a contract was entered into with Peter Kiewit Sons' Co., a corporation, for the construction of the project for the sum of $1,983,659 subject to certain conditions and exceptions hereinafter related. The contract contained the following provisions:

"Article VII—Payments: For and in consideration of the faithful performance of the work herein embraced, as set forth in the Contract Agreement, Specifications, Special Provisions, Bidding Schedule and all general and detailed Specifications and Plans, which are a part hereof, and in accordance with the directions of the State Highway Engineer and to his satisfaction or his authorized agents, the said State of Arizona agrees to pay to said Contractor the amount earned, computed from the actual quantities of work performed, as shown by the estimates of the State Highway Engineer, and the unit prices named in the attached Bidding Schedule and Supplementary Agreements made a part hereof, and

to make such payments in the manner and at the times provided in the Specifications hereto appended."

\* \* \* \* \* \*

"In the event contract unit prices indicate a total cost of the contract in excess of the funds programmed for the contract, the length of the contract may be shortened, so that the total cost of the work will conform to the funds allotted thereto."

"Article VIII—It Is Expressly Understood and Agreed that no work shall be done nor any obligations incurred under this contract during the fiscal year 1956–1957 in excess of the funds programmed and budgeted for this project for the fiscal year 1956–57.

"It Is Further Understood and Agreed that all work required to be done under this contract in excess of the funds now appropriated and budgeted for this project shall not be done nor any obligation incurred therefor until such time as the Legislature appropriates the additional funds and the same are budgeted for this project by the Arizona Highway Commission and in that event the parties hereto are bound to continue performance of this contract to the extent permitted by the funds so appropriated and budgeted.

"In the event that no funds are appropriated or budgeted for this project for the succeeding fiscal year, then this contract shall be null and void, except as to that portion for which funds have now been appropriated and budgeted therefor, and no right of action or damages shall accrue to the benefit of the parties hereto as to that portion of the contract that may so become null and void.

"It Is Also Understood and Agreed that this contract is subject to A.R.S., Section 18–134, Section 18–135 and Section 18–136, together with all other limitations pursuant to the applicable laws of the State of Arizona relating to public contracts and expenditures."

On January 22, 1957, there remained unencumbered of the budgeted item for this project the sum of $1,390,000 ($85,000 thereof having been theretofore expended) and the highway department submitted to the respondent auditor an encumbrance document requesting her to encumber the sum of $1,325,000 for the payment of claims to accrue under the provisions of the contract. The respondent refused the request giving as a reason for her disapproval the provisions of sections 35–152, 35–153 and 35–154, A.R.S. The contractor entered into the performance of the contract and for work done a claim was regularly submitted for the sum of $15,723.90. The claim was rejected by respondent.

The respondent in her communication of disapproval gives no specific reason for her action. Section 35–152, supra, requires the auditor when an encumbrance document is submitted to her to disapprove the same if the purpose of the expenditure is contrary to any of the provisions of the budgetary and fiscal provisions for state agencies. Section 35–153, supra, prohibits any budget unit from approving any encumbrance document involving an expenditure in excess of the unencumbered balance of an allotment to which the expenditure is to be charged; and section 35–154, supra, prohibits the incurrence of an obligation for an expenditure not authorized by an appropriation and an allotment.

Wherein the proposed expenditure involved is illegal is not specially stated but from the brief of respondent the contention seems to be that the contract filed with her calls for an expenditure of $1,983,659; that there was budgeted for this project $1,-475,000; that $85,000 thereof had been expended, leaving a balance of the budgeted item of $1,390,000, which resulted in an excess of $593,659 over the proposed expenditure of $1,983,659 mentioned in the contract. It is stated in the brief that as it appears to the auditor the obligation was in excess of the amount appropriated and allocated to the Mule Pass Tunnel project, the expenditure was disallowed. For this position to be sound depends on whether the petitioners have obligated or attempted to obligate the state to pay the full contract price from the amount budgeted and remaining unencumbered for this particular project.

Clearly, the petitioners cannot create an obligation for the fiscal year involved in excess of the unencumbered balance budgeted for the project. The question, therefore, is whether by this contract the state is obligated or attempted to be obligated for such excess. We think not. Under the contract payment is to be made on a unit basis, that is, so much per cubic yard, square yard or linear foot, for different classes of work. The contract expressly stipulated that in the event the contract unit prices indicated a total cost in excess of the funds programmed for the contract the length of the contract may be shortened so that the total cost of the work will conform to the funds allotted thereto. It also provided that no work was to be done nor obligation incurred during the fiscal year in excess of funds programmed and budgeted for such year and that all work required to be done under the contract in excess of funds appropriated and budgeted for the project shall not be done nor any obligation incurred therefor until the legislature appropriates additional funds and the same are budgeted. It is also stipulated that in the event no funds are appropriated or budgeted for the succeeding fiscal year the

contract shall be null and void except as to the portion for which funds have now been appropriated and budgeted.

■ The statute expressly authorizes the petitioner highway commission to enter into construction contracts for highways, the performance of which may extend beyond the close of the fiscal year. Section 18–136, A.R.S. Since payment on this contract is to be made on a unit basis the aggregate of $1,983,659 is of necessity an estimate and should the amount of dirt moved or other unit work performed at the respective prices mentioned therein aggregate more than the balance of the unencumbered fund set up in the budget, the contract necessarily would have to extend beyond the fiscal year and the state's obligation thereafter was conditioned upon whether the legislature made further appropriation. In effect, the petitioners obligated the state to pay at the unit prices for work performed to the extent that there were funds budgeted and appropriated and no more. Any obligation thereafter was conditioned upon further appropriation by the legislature. Our view is that the petitioners incurred on behalf of the state a legal obligation to pay according to the terms of the contract for the amount of work performed during the fiscal year but only to the extent of the unencumbered balance remaining in the funds allotted therefor.

■ We observe nothing illegal in such a contract. There is good authority for the proposition that where a state official has allotted to him a specific limited fund for the construction of a specific project and the statute does not limit the right to contract for a larger amount and the costs thereof exceed the available fund, the contract is valid to the extent of the funds available. In re State House Construction Loan, 20 R.I. 704, 38 A. 927, 931. In that case the state house commissioners had available for the construction of a state house a limited special fund. Apparently the project could not be completed within the limits of the fund. The governor certified to the supreme court the question as to whether the commissioners could enter into a valid contract for a larger amount. The court said that such a contract could be made but that

"all contracts made by them in excess of said state house fund shall stipulate that no money shall be required to be paid thereon whenever and so long as there shall be no unexpended appropriation applicable to the payment of bills audited by said board of state house commissioners."

■ There was a balance in the budgeted item of $1,390,000. The encumbrance document requested that the auditor encumber only $1,325,000 thereof, which left an unencumbered balance of $65,000. Suggestion

is made that this justified respondent in refusing to recognize the requested encumbrance and pay claims thereon for the reason that the law does not permit the submission of an encumbrance request for less than the actual or anticipated expenditure. No law is cited to support this proposition. Under a contract of this character wherein the aggregate amount ultimately to be paid out of a fund is indefinite, we do not know of any law which prohibits the anticipation of an expenditure less than the budgeted item and request of an encumbrance to that extent.

It is stated that the contract creates a deficit obligation in excess of $500,000 and offends Article 9, section 5, of the Arizona constitution, A.R.S. Since we hold that the contract creates no debt over and above the budgeted item this constitutional provision can have no possible application.

There are other suggestions such as public policy and possibility of the invalidity of the contractor's bond because of some provisions of the contract which we think unnecessary to discuss. The respondent should have recognized the request for the encumbrance and issued a warrant for the claim submitted.

The alternative writ of mandamus was properly made peremptory.

UDALL, C. J., and PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.