722 P.2d 352

**UNIVERSITY of ARIZONA, an agency of the State of Arizona; Arizona Board of Regents, an agency of the State of Arizona, Petitioners,**

v.

**The Superior Court of the State of Arizona, in and for the COUNTY of PIMA, the Honorable Lawrence H. Fleischman, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondents,**

**and**

**Ben LINDSEY and Jeri Lindsey, husband and wife, Real Parties in Interest.**

**No. 2 CA–SA 0337.**

Court of Appeals of Arizona, Division 2, Department B.

Jan. 16, 1986.

Reconsideration Denied March 4, 1986.

Review Denied June 24, 1986.

James L. Richmond, Tucson, for petitioners.

Allen, Kimerer & LaVelle by Michael J. LaVelle and Russell A. Kolsrud, Phoenix, for real parties in interest.

## OPINION

LIVERMORE, Presiding Judge.

Petitioners have brought this special action from the trial court's denial of a motion for summary judgment which would, in effect, terminate litigation brought against them by the former University of Arizona men's basketball coach, Ben Lindsey. Petitioners' motion was based on alternative grounds: (1) the parol evidence rule bars the real party in interest's claim of a multi-year employment contract which conflicts with his written employment agreement, and (2) the alleged unconditional employment contract for more than one year is void and unenforceable under A.R.S. § 35–154. Were only the parol evidence rule argument advanced, this court would have declined jurisdiction since, in our view, allegations in the complaint, supported by deposition and affidavit, raise factual issues precluding summary judgment. However, we believe the application of A.R.S. § 35–154 is a matter of important public interest justifying the acceptance of jurisdiction. See *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983).

The facts necessary for our discussion of this issue are that in March 1982 Dave Strack, then athletic director of the University of Arizona, at the request of the then president of the University, Dr. John Schaefer, offered Lindsey a position as men's basketball coach. According to Lindsey, when he interviewed for the position two months earlier, he inquired as to how long it would take to rebuild the program and was told the new coach would have four years to do so. Lindsey alleges that Strack told him that, although the appointment for all professors and coaches at the University was for a one-year term, he would have the normal "four years" to demonstrate his ability as head coach and his contract would be resubmitted annually for reappointment for a minimum of four years. In his deposition, Schaefer has verified Lindsey's allegations as to the four-year promise and admits that he gave express authority to Strack to make this commitment to Lindsey.

After Lindsey was hired, the University through Strack reaffirmed its commitment to him that the contract would be resubmitted to the Board of Regents for a minimum of four years to allow Lindsey the opportunity to rebuild the basketball program. However, on April 21, 1983, Lindsey was notified by Cedric Dempsey, the new athletic director, that his contract would not be submitted for renewal. Lindsey brought suit against the University of Arizona and the Board of Regents, along with various individuals connected with his hiring and subsequent termination, alleging breach of contract, fraud, intentional interference with advantageous business relationship, and intentional infliction of emotional distress. The defendants moved for summary judgment on all counts, and the respondent court granted the motion except for Lindsey's breach of contract and fraud counts against petitioners.

Petitioners argue that, since the alleged contract with Lindsey was for more than one year, it violated the terms of A.R.S. § 35–154 and is therefore void and unenforceable. That section reads:

*"Unauthorized obligations; effect; liability*

A. No person shall incur, order or vote for the incurrence of any obligation

against the state or for any expenditure not authorized by an appropriation and an allotment. Any obligation incurred in contravention of this chapter shall not be binding upon the state and shall be null and void and incapable of ratification by any executive authority to give effect thereto against the state.

B. Every person incurring, or ordering or voting for the incurrence of such obligations, and his bondsmen, shall be jointly and severally liable therefor. Every payment made in violation of the provisions of this chapter shall be deemed illegal, and every official authorizing or approving such payment, or taking part therein, and every person receiving such payment, or any part thereof, shall be jointly and severally liable to the state for the full amount so paid or received."

While it has been commonly thought that this statute precludes employment contracts of longer than one year's duration, we do not believe a reading of the statute and applicable case law supports that conclusion. In our view the statute simply provides the state a mechanism to avoid liability when the legislature chooses, for financial reasons, to do so.

In *Duff v. Jordan*, 82 Ariz. 228, 311 P.2d 829 (1957), our supreme court was faced with a case in which the Department of Transportation had contracted to pay $1,983,659 for a specified road improvement when the legislature had appropriated only $1,475,000. The state auditor refused to pay the first bill for construction, basing her refusal on § 35–154, considering the obligation "illegal." The court found that that section prohibited "the incurrence of an obligation for an expenditure not authorized by an appropriation and an allotment." 82 Ariz. at 231, 311 P.2d at 832. The court stated:

"Clearly, the petitioners cannot create an obligation for the fiscal year involved in excess of the unencumbered balance budgeted for the project.... [The contract] also stipulated that in the event no funds are appropriated or budgeted for the succeeding fiscal year the contract

shall be null and void except as to the portion for which funds have now been appropriated and budgeted.

... in effect, the petitioners obligated the state to pay at the unit prices for work performed to the extent that there were funds budgeted and appropriated and no more. Any obligation thereafter was conditioned upon further appropriation by the legislature. Our view is that the petitioners incurred on behalf of the state a legal obligation to pay according to the terms of the contract for the amount of work performed during the fiscal year but only to the extent of the unencumbered balance remaining in the funds allotted therefor.

We observe nothing illegal in such a contract." 82 Ariz. 231–232, 311 P.2d at 832–833.

Arizona Attorney General Opinion 1–80–022 lends further support for our construction of § 35–154. In that opinion, the attorney general made reference to the case of *Board of Supervisors of Apache County v. Udall*, 38 Ariz. 497, 1 P.2d 343 (1931), in which the supreme court found that the obligation which the Board of Supervisors attempted to incur violated provisions of the state budget law by obligating the county on indebtedness which could not legally be met under its budget or by other funds on hand. The court said that the contract was void "not necessarily because of the length of time which it runs, but because of the prohibition against the incurring of the indebtedness." 38 Ariz. at 511, 1 P.2d at 349. In his opinion, the attorney general later referred to the *Udall* decision as highlighting "the need to include a clause in any contract which would extend beyond the end of the current fiscal year to the effect that the Board may be released from its future obligation if funds are not available. See A.R.S. § 35–154." It would certainly appear that the attorney general's reading of § 35–154 would not make mandatory the voiding of petitioners' contractual obligation in the instant case.

Our reading of the statute is consistent with *Harris v. Arizona Board of Regents*, 528 F.Supp. 987 (D.Ariz.1981). There the Board argued that a dean could not promise tenure in three years to the plaintiff since it was the Board's practice to issue appointment notices only for the next academic year. The opinion, without mention of § 35–154, found the argument "unpersuasive" and held that tenure arose from the agreement with university officials that a tenured employee's name would be resubmitted to the Board for the granting of an appointment each year. Such an agreement is alleged in this case, and we see no difference between the promise to resubmit Lindsey's contract for three succeeding years and the promise by the University in *Harris* to resubmit a professor's contract for successive years with tenure attaching at the end of three years. Petitioners claim that the court in *Harris* was faced with a peculiar set of facts which led it to conclude that plaintiff was entitled to the substantive and procedural protections afforded by tenure. However, petitioners overlook the fact that to reach that conclusion, the court had to have held that Arizona State University's promise to grant tenure to plaintiff in his third year of employment necessarily "obligated" that university in exactly the same manner that Lindsey claims the University of Arizona has obligated itself to him.

Petitioners presented the trial court with sections of the Arizona Board of Regents Policy Manual. In the Appointment Procedures Section, it states:

"All faculty members shall receive each year a notice of appointment for the fiscal year beginning July 1 or for the academic year beginning on or about August 15. Appointments and reappointments shall be for a period not beyond the period designated in the notice of appointment but shall not be longer than one fiscal year. No oral or written communication made prior to or after the execution of a notice of appointment that is inconsistent or in conflict with the Conditions of Faculty Service shall become a part of the conditions of employment."

Petitioners can surely point to this language and maintain that they are incapable of extending their contractual obligation past a fiscal year. However, in the immediately preceding section, where the term tenure is defined, the manual states:

" 'tenure' shall mean that the president of the university shall offer to a faculty member having attained such status an appointment for each succeeding fiscal or academic year until retirement, resignation, termination for budgetary reasons or educational policy change, or dismissal for just cause. It is not within the Board's power to commit the State to an obligation for which an appropriation has not been made and use of the word 'tenure' does not imply a legal obligation which the Board is not empowered to undertake."

[2] It is true that Lindsey's claim is not founded upon a tenure theory. However, petitioners can offer no explanation as to why they can contract in multi-year terms under provisions of the Policy Manual and yet still rely on § 35–154 to claim that any attempt by them to have contracted with Lindsey for more than one fiscal year must necessarily have been void. There is no difference between promising Lindsey a four-year period in which to rebuild a basketball program and telling a tenured professor that his or her contract will be resubmitted year after year until resignation or retirement. It is clear that in both cases the final word is spoken by the legislature. Tenured faculty members can be released for budgetary reasons. Arizona Board of Regents Policy Manual, Chapter 6, Section J. Similarly, contractual obligations entered by the University of Arizona in nontenure situations are necessarily conditioned upon funding by the legislature. The so-called "fiscal out" condition mandated by § 35–154 operates as a condition subsequent, allowing the University to avoid its obligations if the requisite funding is not forthcoming. Subject to this implicit condition, contracts for more than

one year are valid and do not violate the statutory prohibition against financial obligations for which there is no appropriation. While neither side has so informed us, we can take judicial notice of the fact that the University of Arizona has maintained a men's basketball program after Lindsey's termination; legislative funding for Lindsey's position must necessarily have been approved. The trial court properly denied summary judgment on the contract and fraud claims against petitioners. Relief is denied.

HOWARD and LACAGNINA, JJ., concur.