639 P.2d 350

**Schuyler W. LININGER,
Plaintiff/Appellee,**

v.

**DINE OUT CORPORATION, a Nevada
corporation, and Dine Out Clubs,
Defendants/Appellants.**

No. 2 CA–CIV 3959.

Court of Appeals of Arizona,
Division 2.

Nov. 2, 1981.

Rehearing Denied Dec. 29, 1981.

Lesher, Kimble & Rucker, P. C. by Stephen H. Lesher and William Kimble, Tucson, for plaintiff/appellee.

Scott, McLean & Renneckar by William C. Scott, Tucson, for defendants/appellants.

## OPINION

### HATHAWAY, Chief Judge.

The defendant in this breach-of-contract action appeals from the imposition of sanctions for pretrial practice and from the judgment awarding plaintiff $4,298.58 for loss of profits. We see no error and affirm.

Plaintiff is the operator of the Lodge on the Desert restaurant in Tucson. He contracted with the defendant to participate in a program in which the defendant sells coupon booklets entitling purchasers to two meals for the price of one at participating establishments. The program had been a success for the plaintiff before, so he signed a new contract. He suggested, however, that the restaurant's participation start in April 1979, instead of February 1979.

Because of this change, the contract was signed subject to approval by Dine Out Clubs of Tucson. Prior to the suggested April 15 commencement date, plaintiff called Dine Out headquarters in Nevada to inquire why Lodge on the Desert was not appearing in Dine Out's advertising. He was told that Dine Out could not fit the Lodge into the program with the changed dates. On April 15 or 16, however, a Dine Out coupon stamped "mystery bonus" and redeemable at the Lodge on the Desert was presented by a customer. Plaintiff redeemed this coupon. He subsequently redeemed two more. During his participation in the program the year before, he had served 3,901 dinners in connection with the program. In the current program, he served only six.

Plaintiff filed suit in June 1979 for breach of contract. The case was set for trial in July 1980, but because of a failure to file a pretrial statement, the cause was removed from the active calendar. Plaintiff successfully petitioned to reestablish the cause on the active calendar and also procured sanctions against defendant, consisting of an order precluding defendant from offering any testimony or exhibits at trial.

## SANCTIONS

Defendant contends that the sanctions imposed by the trial court were unreasonably harsh.

Rule VI of the Uniform Rules of Practice of the Superior Court requires the filing of a pretrial statement prepared by both counsel. Only those witnesses and exhibits listed in the statement may be used during the trial, unless good cause is shown for the failure to file on time.

Local rule III for Pima County requires that the pretrial statement be filed 20 days before trial. Failure to file results in the assignment of the cause to the inactive calendar. In the instant case, plaintiff's counsel forwarded a proposed pretrial statement and explanatory letter to defendant's attorney. No answer was received and defendant's attorney was out of town, so plaintiff filed a unilateral statement on the filing deadline. Defendant's attorney filed a "supplemental" pretrial statement after the required filing date.

■ We do not agree with defendant's assertion that the trial court abused its discretion by imposing the sanction. The language of uniform rule VI(a) is mandatory:

"No other exhibits or witnesses shall be used during the trial other than those listed and exchanged, except for good cause shown."

A reminder of this rule was mailed to both parties in this action on May 7, 1980. Defendant seeks to excuse his failure to help prepare the statement by arguing that plaintiff should have moved for a compulsory conference pursuant to uniform rule VI(b) and local rule III, and that plaintiff's

proposed pretrial statement included an exhibit that had not actually been exchanged. Matters of pretrial procedure are within the discretion of the trial court. *Kelch v. Courson*, 7 Ariz.App. 365, 439 P.2d 528 (1968). The trial court could reasonably have concluded that these circumstances were not "good cause" such as to excuse the neglect of defendant's attorney. Had defendant's counsel responded to the proposed statement before the filing deadline, even if only to indicate his intent not to complete it, then other options such as a motion for a compulsory conference would have been available.

### THE CONTRACT

Both parties agree that plaintiff's modification of the dates of the program constituted a counteroffer to Dine Out. Plaintiff suggests that Dine Out must have printed and sold the coupons sometime before the telephone conversation between himself and Dine Out headquarters in Nevada. He argues that Dine Out thereby accepted his contract by conduct. The evidence of this acceptance by performance was thin. Even if it were sufficient, we believe the phone call acted as notice to plaintiff of nonacceptance. See Restatement (Second) of Contracts, § 55(2), comment c.

■ The story does not end here, however. The inclusion of Lodge on the Desert coupons in the Dine Out program is characterized by plaintiff as yet another offer, this one by Dine Out to plaintiff. We agree. An offer may be made by conduct, if the offeror has intentionally or negligently engaged in the conduct and the offeror knows or has reason to know that the conduct will be understood by the offeree as an offer to contract. J. Murray, Contracts, § 26 (2nd ed. 1974). Dine Out argues, "No reasonable man in his right mind" would think that a few "mystery bonus" coupons would constitute an offer. The coupons that were presented, however, carried the name and address of the restaurant and the expiration dates requested by plaintiff, as well as other terms of the agreement. The words "mystery bonus," although appearing in capital block letters, were printed in light blue ink and are not obvious except upon careful inspection. We believe the trial court did not abuse its discretion, since a reasonable man could indeed find that Dine Out's distribution of these coupons was an offer to plaintiff, which he accepted by redeeming the coupons.

■ Dine Out contends next that, if there was a contract, there at least was no breach. One of the provisions of the written memorandum of the original agreement was that Dine Out would "recommend" Lodge on the Desert to its customers. Dine Out posits that this is the only obligation it had under the contract and that there was insufficient evidence to establish a breach of this duty. Viewing the evidence and inferences from it in the light most favorable to the prevailing party, see *Bates & Springer of Arizona, Inc. v. Friermood*, 109 Ariz. 203, 507 P.2d 668 (1973), we believe the trial court had facts before it from which to conclude that the contract was breached. That Dine Out did not advertise Lodge on the Desert and that plaintiff received only six customers from the program instead of the previous year's 3,901 leads reasonably leads to the conclusion that Dine Out was not recommending the restaurant to its members.

### DAMAGES

■ Plaintiff claimed $23,342 in damages. Half of this sum represented the expected profit from the program, based on the number of customers and the profit-per-customer during the previous year's program. Defendant contends that the award of $4,298.58 (minus $31.71 for the three coupons redeemed by Dine Out) was unsupported by the evidence. Defendant's contention is that the evidence of loss was speculative because the previous year's contract was not in evidence; there is no way to gauge the accuracy of the plaintiff's expert witness, according to Dine Out, because the terms of the previous contract may have been different.

Courts will award damages for loss of profits in an established business, *see China*

*Doll Restaurant, Inc. v. Schweiger,* 119 Ariz. 315, 580 P.2d 776 (App.1978), if they are proved with certainty. Such certainty is provided where the plaintiff devises some reasonable method of computing his net loss. *Irish v. Mountain States Telephone & Telegraph Co.,* 31 Colo.App. 89, 500 P.2d 151 (1972). Plaintiff testified that the two contracts were the same except for the difference in the dates of performance and the provision for approval by Dine Out. Thus, there was a sufficient basis for a comparison of the expected profit from the new contract and what was realized by plaintiff after defendant's breach. In addition, there was extensive testimony by an expert witness, a certified public accountant, as to his method of arriving at the estimate of lost profit. The testimony shows that the witness used conservative accounting procedures to arrive at a reasonable estimate of the loss. Since loss-of-profit damages for established businesses are not speculative as a matter of law and since plaintiff proved his particular damages with reasonable certainty, we hold there was no abuse of discretion in awarding the $4,298.58 for lost profits.

Dine Out's last argument is that plaintiff had a "duty to mitigate" his damages. One provision of the agreement was that plaintiff's restaurant could not participate in any similar program at the same time. Plaintiff testified that he was approached by two organizations offering a program similar to Dine Out's but declined because he was barred by his obligation to Dine Out. He presented an estimate in his trial memorandum that this cost him an additional $11,671 in damages.

Dine Out's position is that the rule of avoidable consequences required plaintiff to join one of these programs in order to minimize the amount of his damages, and that plaintiff's own testimony proves his failure to do so.

The doctrine of avoidable consequences is well established in Arizona. See *Coury Brothers Ranches, Inc. v. Ellsworth,* 103 Ariz. 515, 446 P.2d 458 (1968). Plaintiff does not quarrel with this proposition but

rather challenges Dine Out's right to assert it, having failed to plead it as an affirmative defense. See 16 A.R.S., Rules of Civil Procedure, rule 8(d). We cannot grant Dine Out's request to amend the pleadings to assert the defense at this time pursuant to rule 15(b) of the Rules of Civil Procedure, as we do not believe the issue of avoidable consequences was "tried" to the court either expressly or impliedly. We believe, also, that surprise and prejudice to the plaintiff can be assumed where the suggestion to amend the pleadings is first announced in the appellant's reply brief. See *Bujanda v. Montgomery Ward & Co., Inc.,* 125 Ariz. 314, 609 P.2d 584 (App.1980).

Affirmed.

HOWARD and BIRDSALL, JJ., concur.