754 P.2d 1152

**Ben LINDSEY and Jerri Lindsey, husband and wife, Plaintiffs/Appellees/Cross–Appellants,**

v.

**UNIVERSITY OF ARIZONA and Arizona Board of Regents, Defendants/Appellants/Cross–Appellees.**

**No. 2 CA–CV 87–0125.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 29, 1987.

Reconsideration Denied Feb. 16, 1988.

Review Denied June 7, 1988.

Allen, Kimerer & LaVelle by Michael J. LaVelle and Russell A. Kolsrud, Phoenix, for plaintiffs/appellees/cross-appellants.

James L. Richmond, Tucson, for defendants/appellants/cross-appellees.

## OPINION

ROLL, Judge.

Defendants/Appellants/Cross–Appellees University of Arizona and Arizona Board of Regents (University) appeal from a jury verdict awarding Ben Lindsey (Lindsey) and his wife Jerri $695,000 in damages. This lawsuit arose from the dismissal of Lindsey as head basketball coach at the University of Arizona.

## FACTS

In the Spring of 1982, the University of Arizona attempted to locate a head coach for the men's basketball team. Ben Lindsey had successfully coached men's basketball at Grand Canyon College for several years. His teams captured national championships on two occasions and routinely won their district's title. Grand Canyon College competed at the National Association of Intercollegiate Athletics (NAIA) level, which is a less demanding level of competition than basketball at the National Collegiate Athletic Association (NCAA) division one level, in which the University of Arizona men's basketball team competed. Lindsey applied for the University of Arizona coaching position.

Lindsey testified that at a meeting with members of a search committee engaged in locating a new coach, someone stated that no one would be hired for the coaching position for less than three to four years. Lindsey also testified that during discussions with then-athletic director Dave Strack, Strack told Lindsey that it was University policy to give coaches a minimum of four years before being evaluated. On July 6, 1982, Lindsey accepted a formal appointment as Adjunct Professor of Physical Education for the year 1982–1983. The only document reflecting the contract between Lindsey and the University concerning the head coaching position was a letter to Lindsey from then-University President John P. Schaefer, which stated:

Dear Mr. Lindsey:

You are requested to serve as Head Coach of Men's Basketball at the University of Arizona, effective July 1, 1982 and ending no later than June 30, 1983.

It is the policy of the Arizona Board of Regents that an academic-administrative assignment is not a contract and that it can be terminated by the President of the University at any time.

It is also policy that the assignment is renewable at my option and that renewal must be confirmed by a letter from my office. I would appreciate it if you would sign the enclosed copy of this letter to indicate your willingness to serve

in this assignment. Please return it to Faculty Records (Administration 507) within ten days.

Sincerely,

/s/ John P. Schaefer

JOHN P. SCHAEFER

Lindsey signed the bottom of a copy of the Schaefer letter on July 7, 1982. Above his signature and date is the notation, "I hereby accept the foregoing assignment." By the time Lindsey signed the letter, Strack had been replaced as Athletic Director by Cedric Dempsey and Schaefer had been replaced as President of the University by Henry Koffler.

Lindsey was to receive approximately $90,000 per year as compensation. This consisted of $49,115 annual salary, approximately $30,000 per year arising from a contract with a shoe company which Lindsey promoted, and an additional $10,000 anticipated from conducting a basketball camp and other benefits associated with the position.

After Lindsey was hired, the University men's basketball team experienced its worst record in history. The team's record for the 1982–1983 season consisted of four wins and twenty-four losses. The team won but one conference game and lost seventeen.

Because of Lindsey's lack of familiarity with NCAA regulations, he did not realize that the basketball team could engage in organized pre-season conditioning. Accordingly, unlike most major university basketball programs, the University did not have an organized pre-season conditioning program before the commencement of the 1982–83 season.

Dempsey, whose background included approximately four years as an assistant basketball coach at the University of Arizona between 1962 and 1966, testified that Lindsey's practices appeared to be unorganized. During the season, some players on the team requested the opportunity to meet with Dempsey. Although Dempsey attempted to avert a meeting behind Lindsey's back by asking Lindsey to be present, thereafter the players again requested a private meeting with Dempsey. Eventually, seven players met with Dempsey, some of whom expressed their dissatisfaction with Lindsey. One complaint consisted of the fact that Lindsey made last minute changes in the game plan before the team had an opportunity to practice the suggested changes. Lindsey testified that some of the players recruited by the former coach had difficulty adjusting to his methods.

After one particular loss, Lindsey told members of the basketball team that one of his Grand Canyon College teams could have defeated the opposing team. Dempsey also detected sagging community support for the program, evidenced by reduced attendance and revenue. During the basketball season, attendance at home basketball games fell substantially below even the number of season ticket holders.

An assistant coach testified at deposition that during the season, Lindsey informed the assistant coaches that he would no longer be able to share proceeds from his shoe contract with the assistant coaches because he would need to use the money to cheat in order to do a better job on recruiting. Lindsey pointed to a statement by one assistant coach in the presence of some players that Lindsey was "one of the worst coaches in America" as evidence of how some of his assistants did not support him.

Sometime around March 15, 1983, Athletic Director Dempsey notified Lindsey that his appointment would not be renewed after June 30, 1983. The University offered three reasons for Lindsey's termination: 1) the communication relationships between Lindsey and certain players on the basketball team; 2) Lindsey's prospects for a successful recruiting effort; and 3) the technical tasks of rebuilding the University Basketball Program. The University issued a press release on or near May 26, 1983, which commented favorably on Lindsey's contributions to the University and praised his conduct as a coach.

The University gave Lindsey two checks totalling $49,115 as severance pay, $1,890.98 of which was to pay off Lindsey's American Express balance.

After Lindsey's termination, he attempted to seek comparable employment. In his efforts, Lindsey sent inquiries to several educational institutions.[1]

## PROCEDURAL HISTORY

On April 19, 1984, Lindsey filed a complaint alleging breach of contract, fraud, intentional interference with contractual relations, and intentional infliction of emotional distress. The lawsuit named as defendants the University of Arizona, the Arizona Board of Regents, Cedric Dempsey and June Dempsey, and Henry Koffler and Phyllis Koffler.

On April 19, 1985, the first amended complaint was filed, adding as defendants Warren and Carson Rustand. On December 17, 1985, the trial court granted motions for summary judgment in favor of the University of Arizona, the Arizona Board of Regents, Dempsey, and Koffler on the claims for intentional interference with contractual relations and intentional infliction of emotional distress. This ruling was affirmed by this court in *Lindsey v. Dempsey*, 153 Ariz. 230, 735 P.2d 840 (1987). Thereafter, the Rustands' motion for summary judgment was granted by the trial court.

On February 28, 1986, Lindsey filed a second amended complaint, adding a claim of fraud/breach of duty of good faith. Trial to a jury commenced on September 17, 1986. Following plaintiffs' opening statement, the trial court dismissed the fraud count. At the conclusion of the plaintiffs' case, the trial court granted the University's motion for directed verdict on the claim for breach of contract. The trial court submitted to the jury the claim for breach of the implied covenant of good faith and fair dealing in connection with Lindsey's employment contract.

The jury awarded Lindsey $215,000 for deprivation of three years of employment

and awarded an additional $480,000 for decrease in Lindsey's future earning capacity. This appeal followed.

## ISSUES ON APPEAL

On appeal, the University argues that the jury could not find an implied covenant of four years' employment because the written contract between Schaefer and Lindsey specifically provided for a renewable one-year term of employment; that Lindsey cannot recover damages for impairment of future earning capacity; that prejudgment interest was improperly awarded by the trial court on the entire sum of $215,000 in lost wages from the date Lindsey's employment was terminated; and that attorneys' fees were improperly computed by the trial court.

In Lindsey's cross-appeal, he argues that the trial court erred in directing a verdict against Lindsey on the breach of contract claim and in denying Lindsey damages for humiliation and emotional distress.

## BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The trial court granted a directed verdict on Lindsey's breach of contract claim but submitted to the jury Lindsey's claim of breach of an implied covenant of good faith and fair dealing. The University argues that if no breach of contract occurred, there can be no breach of the implied covenant of good faith and fair dealing and the trial court should have granted the University a directed verdict on this claim also.

■ Although Lindsey argues that this matter has already been disposed of by our ruling in *University of Arizona v. County of Pima*, 150 Ariz. 184, 722 P.2d 352 (App. 1986), we disagree. That decision was not dispositive on this issue and does not con-

1. One form of letter that he sent to several schools stated:

> Dear Sir:
> After almost twenty years of success coaching, I recently received a setback to my career at the University of Arizona. The President and Athletic Director who hired me both re-

signed and a new Athletic Director released me and hired Lute Olson from Iowa.
> After doing other things this past year, I have decided to get back into coaching. If there is an opening at your institution I will be interested in applying.
> Please contact me at the below address.

stitute the law of the case.[2] The doctrine of "law of the case" is not applicable when the issue was not actually decided in the earlier decision. *Dancing Sunshines Lounge v. Industrial Commission of Arizona,* 149 Ariz. 480, 485, 720 P.2d 81, 86 (1986). This issue was not resolved in *University of Arizona v. County of Pima, supra.*

■ Despite the specific language contained in the letter from President Schaefer, Lindsey presented evidence from which the jury could have concluded that he would have the security of coaching for four years at the University of Arizona. An employer's oral representations may modify the terms of a contract and create a question of fact for the jury as to the terms of the contract. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985); *Loffa v. Intel Corp.,* 153 Ariz. 539, 545, 738 P.2d 1146, 1152 (App.1987); A. Corbin, *Corbin on Contracts,* § 585 at 481–87 (1960).

■ The evidence at trial was sufficient to sustain a verdict that the University breached an express contract with Lindsey by terminating his employment before four years of employment elapsed. Implicit in the jury's verdict is the finding that Lindsey accepted a one-year renewable contract which the University promised to renew for three additional years. On the other hand, we do not believe that sufficient evidence existed to submit to the jury the claim of breach of the implied covenant of good faith and fair dealing. The mere fact that an employee is terminated before his full term of employment is completed does not entitle the employee to maintain actions both for breach of contract and breach of the implied covenant of good faith and fair dealing. This is particularly true where, as here, an employee's termination does not violate public policy. *See Rawlings v. Apodaca,* 151 Ariz. 149, 158, 726 P.2d 565, 574 (1987); *Wagenseller,* su-

pra, 147 Ariz. at 380–81, 710 P.2d at 1035–36.

■ We believe that the trial court granted the directed verdict on the breach of contract claim because Lindsey endorsed the letter of then-President Schaefer. That letter offered Lindsey employment for a term from July 1, 1982 to June 30, 1983. The University's action in terminating Lindsey was not in violation of the explicit language contained in this contract. However, the University's termination of Lindsey's employment in light of the evidence of statements of then-Athletic Director Strack and some unidentified member of the search committee regarding the University's policy of giving coaches four years to prove their worth permitted the jury to find that the University violated an express oral promise by the University to renew Lindsey's contract for three additional years. The trial court instructed the jury on Lindsey's claim of breach of the implied covenant of good faith and fair dealing. The instructions, read as a whole, told the jury to return a verdict for Lindsey only if Lindsey proved that the University promised Lindsey that he would be afforded a reasonable time, to wit, three additional years, before he faced termination. Because the breach of contract claim was, in effect, submitted to the jury, and damages were readily ascertainable, we believe that any error was harmless. Rule 61 Ariz.R.Civ.P. 16 A.R.S.; *Holtz v. Holder,* 101 Ariz. 247, 251, 418 P.2d 584, 588 (1966).

We affirm the jury's award of $215,000 for deprivation of employment for three years because sufficient evidence was presented to sustain a finding of breach of contract.

## LOSS OF FUTURE EARNING CAPACITY

The jury also awarded Lindsey $480,000 for loss of future earning power. Lindsey maintains that he is entitled to this compen-

---

**2.** The University brought a special action following the trial court's denial of its motion for summary judgment. This court held that A.R.S. § 35–154, a statutory provision allowing the state to avoid obligations of more than one year if requisite funding was not forthcoming, was not a bar to Lindsey's action. *University of Arizona v. County of Pima,* 150 Ariz. 184, 722 P.2d 352 (App.1986).

sation because of the difficulty he has had and will encounter in obtaining employment as a coach in view of his premature termination as coach at the University of Arizona. The jury awarded these damages based upon breach of an implied covenant of good faith and fair dealing. As we have indicated, we uphold the jury's verdict based on breach of contract and not breach of the implied covenant of good faith and fair dealing.

■ Damages for diminution in future earning power or capacity are not recoverable in an action for breach of an employment contract. In *Perry v. Apache Junction Elementary School District No. 43*, 20 Ariz.App. 561, 563, 514 P.2d 514, 516 (1973), this court stated:

> The law is well settled that the only damages which may be recovered by an employee who has been wrongfully discharged is the balance of the salary due under the employment contract less any sums the employee was able to earn during the remainder of the contract period.

*See also* A. Corbin, *Corbin on Contracts*, § 1095 at 516 (1960).

■ In an action for breach of contract, the employee is not permitted recovery for injury to his reputation because the computation of damages is too speculative and the damage cannot reasonably be presumed to be within the contemplation of the parties when they entered into the contract. *Fogelman v. Peruvian Associates*, 127 Ariz. 504, 506, 622 P.2d 63, 65 (App. 1980), *overruled in part on other grounds, Fleming v. Pima County*, 141 Ariz. 149, 156, 685 P.2d 1301, 1308 (1984). Certainly, the jury's award of $480,000 damages for decrease in Lindsey's future earning power or capacity is speculative. Had Lindsey continued in his employment as the University of Arizona head basketball coach for an additional three years and sustained losing seasons similar to the team's 4–24 overall record for the 1982–83 season, his coaching career would most likely have been ended and he would have no future earning capacity as a basketball coach. Had he, on the other hand, coached the team to a national championship, his

future earning capacity may have exceeded the $480,000 award many times over. The jury could do nothing more than engage in speculation and conjecture as to the effect Lindsey's termination would have upon his future earning capacity.

Although Lindsey relies upon *Grip–Pak Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, (7th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983), *Lininger v. Dine Out Corporation*, 131 Ariz. 160, 639 P.2d 350 (App.1981), *Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 124 Ariz. 242, 603 P.2d 513 (App. 1979), and *Sorensen v. Robert N. Ewing General Contractor*, 8 Ariz.App. 540, 448 P.2d 110 (1968), none of these decisions involve the right of an employee to collect damages for impairment of future earning capacity as a result of termination.

We vacate the judgment to the extent that it awards Lindsey $480,000 for loss of future earning power.

### PREJUDGMENT INTEREST

■ Following the jury's verdict, the trial court awarded Lindsey prejudgment interest on the jury's award of $215,000 for the loss of three years of employment. Prejudgment interest on a liquidated claim is a matter of right. *Fleming v. Pima County, supra*, 141 Ariz. at 155, 685 P.2d at 1307 (1984).

■ The trial court awarded prejudgment interest on the entire $215,000 award from March 15, 1983. However, interest should be calculated from the date the sums become due. *Id.*, at 155–156, 685 P.2d at 1301–02; *L.M. White Contracting Company v. St. Joseph Structural Steel Co.*, 15 Ariz.App. 260, 265, 488 P.2d 196, 201 (1971), *citing Webb v. Crane Co.*, 52 Ariz. 299, 80 P.2d 698 (1938). Prejudgment interest should have been awarded by the trial court from the respective dates of the three successive years when Lindsey would have been entitled to receive compensation.

### CALCULATION OF ATTORNEYS' FEES

■ Attorneys' fees in this action were awarded to Lindsey pursuant to A.R.S.

§ 12–341.01. The University complains that the trial court applied a multiplier of 1.3 to a lodestar figure of $70,240, resulting in an award of $91,312. The affidavit of Lindsey's attorneys quoted attorneys' fees as consisting of $138,738.98 based upon actual hourly rates.

We do not believe that the trial court's award improperly inflated the amount of attorneys' fees.

## CROSS–APPEALS

### DIRECTED VERDICT ON BREACH OF CONTRACT CLAIM

At the close of Lindsey's case, the trial court granted the University's motion for directed verdict on the claim for breach of contract. In his cross-appeal, Lindsey argues that because *Loffa, supra,* states that the nature of the employment relationship is a question of fact to be determined by a jury, the trial court erroneously directed a verdict as to the breach of contract claim. We agree, but have addressed this matter earlier in this opinion.

### HUMILIATION AND EMOTIONAL DISTRESS

Lindsey also maintains that the trial court erred in refusing to submit to the jury the issue of damages for humiliation and emotional distress. As we previously observed, these damages are generally not awardable for breach of contract.

We affirm the judgment insofar as it awards Lindsey $215,000 for loss of employment for three years and an additional $91,312 for attorneys' fees, vacate the judgment insofar as the award of $480,000 for loss of future earning capacity is concerned, and remand to the trial court for computation of prejudgment interest consistent with this opinion.

LIVERMORE, Presiding Judge, specially concurring.

There are additional reasons on the facts of this case why no award for impairment of future earnings should be made. Any time an employee is fired or not retained there is necessarily a negative inference. If the employee were truly able an employer would retain him. Because the employer did not, he must not be truly able. That fact of life ought not to permit an award of damages. To hold otherwise might require employers to retain less than able employees because at some future time a jury might conclude that termination violated some implicit duty of good faith not to think badly of the employee.

Additionally, the conduct of the University in terminating Lindsey in breach of an oral contract to retain him for four years did not impair his future earning capacity. That capacity was impaired by Lindsey's coaching record. The University's act did no more than recognize what already was publicly obvious—Lindsey's year at the University was unsuccessful. There is, it seems to me, no obligation of good faith to treat what is plainly true as false.

Lindsey, the jury found, was entitled to be paid his salary for four years plus those consequential losses, money for shoe contracts and basketball camps, normally associated with coaching. That is all to which he was entitled when the contract was breached.

FERNANDEZ, Judge, specially concurring.

I concur in the decision because, under the unique circumstances of this case, the jury's award was obviously based on the only legal theory which could properly have been submitted to it, that is, breach of contract.

The jury was instructed initially:

You are instructed that the plaintiff's notice of appointment and acceptance of assignment provides that the duration of his employment was one year. Oral statements to the contrary cannot be used to contradict a specific provision in a written agreement.

Plaintiff's only remaining claim is for the breach of implied covenant of good faith and fair dealing.

This instruction was clearly incorrect. However, the trial court's subsequent instructions on breach of the implied cove-

**56**

nant of good faith and fair dealing in effect presented the jury with the breach of contract issue:

> You are instructed that in every agreement there is an implied covenant of good faith and fair dealing. This covenant obligates the employer and the employee. The covenant requires that neither party do anything that will injure the right of the other to receive the benefits of this agreement. The covenant does not give either party to a contract rights other than those for which they have contracted.

> Plaintiffs contend that an implied benefit of the employment agreement was that he would be given a reasonable time before his coaching performance would be evaluated. As to this claim, the plaintiffs have the burden of proof of, number one, this implied covenant existed in the employment agreement, and that, number two, the defendants prevented plaintiffs from receiving this benefit, and, number three, that plaintiffs have suffered damage as a result of the defendants' acts.

>   ·  *    *    *    *    *    *

> If you decide for the plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate for the following elements of damages proved by the evidence to have resulted from defendants' breach of the implied covenant of good faith and fair dealing:

> One, the damages for an additional three years of employment.

> Two, any decrease in earning power or capacity by plaintiffs in the future.

> Plaintiffs have the burden of proving each element of damages. Whether any of these elements of damages has been proved by the evidence is for you to determine.

Thus, even though the trial court initially instructed the jury that it could not consider parol evidence to contradict the provisions of the contract relating to the term of employment, its subsequent instructions necessarily permitted the jury to find that the defendants had promised Lindsey an additional three years' of employment, that that promise was part of the contract, and that it had been breached. Implicit in the jury's award is its finding for Lindsey on all three points. Since the award was essentially one based on breach of contract, no valid purpose would be served by vacating the judgment and remanding for a new trial.

I concur on all other issues.