JOHN B. AND JERRI J. LINDSEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lindsey v. Commissioner
Docket No. 23106-88
United States Tax Court
T.C. Memo 1993-384; 1993 Tax Ct. Memo LEXIS 389; 66 T.C.M. (CCH) 488; August 24, 1993, Filed *389 Decision will be entered under Rule 155. John B. Lindsey, pro se. For respondent: Robert A. Johnson. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioners' Federal income tax for 1983: Additions to Tax
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661 $ 19,106
$ 955.30
50% of the
$ 4,776.50
interest due
on $ 19,106
All section references are to the Internal Revenue Code as amended. The issues for decision are: (1) Whether a payment of $ 49,115 is excludable from petitioners' gross income as "damages received * * * on account of personal injuries" within the meaning of section 104(a)(2); (2) whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2); and (3) whether petitioners are liable for the addition to tax under section 6661 for a substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The Stipulation of Facts filed by the parties and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Phoenix, Arizona, *390 at the time the petition in this case was filed. In this opinion, references to petitioner are to Mr. John B. Lindsey. On April 1, 1982, petitioner was hired as the head basketball coach of the University of Arizona. For 17 years prior to accepting that position, he had been the head basketball coach of Grand Canyon College in Phoenix, Arizona. During his tenure at Grand Canyon College, petitioner's teams won eight district and two national small college championships. At the time petitioner was hired by the University of Arizona, it was thought that State law prohibited the university from entering into multi-year employment contracts. See University of Arizona v. County of Pima, 722 P.2d 352 (Ariz. Ct. App. 1986). Nevertheless, Dr. John Schaefer, who was then the president of the university, and Mr. David Strack, who was then its athletic director, both gave petitioner oral assurances that his 1-year contract would be renewed for 3 additional years. This total of 4 years was designed to give petitioner sufficient time to rebuild the basketball program. Within 2 months after hiring petitioner, Dr. Schaefer and Mr. Strack both resigned their *391 positions. The university hired Dr. Henry Koffler as its new president, and it hired Dr. Cedric Dempsey as its new athletic director. Throughout the 1982-1983 basketball season, players and assistant coaches complained to Dr. Dempsey about petitioner's coaching abilities, his knowledge of the game, and his failure to communicate with the players and the coaching staff. During the season, Dr. Dempsey was also made aware of damaging allegations about petitioner's personal life. The University of Arizona basketball team was not successful during the 1982-1983 season. The team won only four games, and it lost 23 games. This losing record caused dissatisfaction with petitioner throughout the university community and on the part of several influential boosters. During a meeting on March 15, 1983, 3 days after the end of the season, Dr. Koffler told petitioner that he would not be rehired as the university's head basketball coach. On August 12, 1983, the university sent to petitioner two checks for a total payment of $ 49,115. The checks were accompanied by a letter from Dr. Dempsey that states as follows: Dear Ben: Enclosed please find two checks totalling $ 49,115.00, representing *392 the severance pay that was promised to you at the time you were notified of the decision not to renew your appointment in the Department of Intercollegiate Athletics. The enclosed checks are being delivered to you on condition that the check in the sum of $ 1,894.98 payable jointly to the order of the American Express Company and you will be used for the immediate retirement of the outstanding balance on your corporate American Express card account. I have been informed by the University attorney's office that you have agreed through your lawyer to this condition. If, however, there is any question about that agreement, please have your attorney notify Jim Richmond in the University attorney's office before negotiating either check. Sincerely, /s/ Ced Dempsey Cedric W. Dempsey Director of Athletics
Dr. Koffler, the president of the university, made the decision to tender this payment of $ 49,115 to petitioner. Dr. Koffler instructed Dr. Dempsey to make the payment from private funds donated by supporters of the intercollegiate athletic program. The amount of the payment was equivalent to petitioner's base salary. It was given to him in addition to his salary *393 for the 1982-83 season. By letter dated August 17, 1983, petitioner acknowledged receipt of the $ 49,115 payment. Petitioner's letter, which was addressed to Mr. Gary Munsinger, executive vice president of the University of Arizona, states as follows: Dear Gary, I wish to acknowledge that I have received the one year's severance pay that the University committed to me at the time of my dismissal. I am accepting this money with the full and clear understanding as stated to me and agreed upon by yourself, Dr. Koffler, Dr. Biegle, and Cedric Dempsey in a meeting in your office in early June, 1983, that this in no way is meant to satisfy my claim to damages as filed against the University, nor is it meant to be a settlement of any kind, and that I still retain my full rights to bring litigation against the University concerning damages suffered by my family and I as a result of the University's sudden and unfair dismissal of me as Head Basketball Coach. If what I have stated in this letter conflicts in any way with the University's position concerning the severance pay, please notify me in writing within the next two weeks and I will return the money at once. If I do not hear *394 from you I will assume that we are in agreement. Sincerely, /s/ Ben Lindsey Ben Lindsey
The local newspapers reported petitioner's firing, and the event received other publicity. In the aftermath of his firing, petitioner and his family suffered such emotional stress that they required psychological counseling and therapy. The family moved three times in 5 months. The university reported the payment to the Internal Revenue Service on Form 1099-MISC. Mr. Scrivner, chief financial officer of the University of Arizona Foundation, explained this action to respondent's auditor in a letter dated December 2, 1986. Mr. Scrivner's letter states as follows: In response to your November 19, 1986 request for information (copy attached) the following data is provided. The Foundation holds certain funds in a custodial capacity for the Department of Intercollegiate Athletics (ICA) of the University of Arizona. Acting as a custodian we make disbursements from those funds solely at the direction of ICA. On August 11, 1983 we were directed to disburse to Mr. John Ben Lindsey two checks totalling $ 49,115.00. We have no information regarding the provision of services. Whenever *395 we make a payment to any individual it is presumed by us to be for services unless receipts for reimbursement of legitimate business expenses are provided. In this case, none were provided. Therefore, we issued a Form 1099-MISC for the entire amount as we were directed to by ICA. No taxes were paid by the Foundation or are due relative to the disbursement.
Petitioners disclosed their receipt of the $ 49,115 payment to the accountant who prepared their 1983 income tax return. However, petitioners did not include the payment in gross income for the 1983 taxable year. Petitioners also failed to include in income for the 1983 taxable year a payment of $ 5,000 from the Clossco-Adidas Shoe Co. for promoting Adidas brand shoes and interest payments of $ 230. Shortly after respondent issued the notice of deficiency, petitioners conceded that the failure to include the $ 5,000 payment and the $ 230 in interest was an oversight and that these amounts should have been included in the income reported on their 1983 tax return. On April 19, 1984, petitioner filed suit against the university and others in the Superior Court for the County of Pima, Arizona. The record does not contain *396 petitioner's complaint in the State court action but, the nature of the suit and its procedural history are described in Lindsey v. University of Arizona, 754 P.2d 1152, 1156 (Ariz. Ct. App. 1987), as follows: On April 19, 1984, Lindsey filed a complaint alleging breach of contract, fraud, intentional interference with contractual relations, and intentional infliction of emotional distress. The lawsuit named as defendants the University of Arizona, the Arizona Board of Regents, Cedric Dempsey and June Dempsey, and Henry Koffler and Phyllis Koffler. On April 19, 1985, the first amended complaint was filed, adding as defendants Warren and Carson Rustand. On December 17, 1985, the trial court granted motions for summary judgment in favor of the University of Arizona, the Arizona Board of Regents, Dempsey, and Koffler on the claims for intentional interference with contractual relations and intentional infliction of emotional distress. This ruling was affirmed by this court in Lindsey v. Dempsey, 153 Ariz. 230, 735 P.2d 840 (1987). Thereafter, the Rustands' motion for summary judgment was granted by the *397 trial court. On February 28, 1986, Lindsey filed a second amended complaint, adding a claim of fraud/breach of duty of good faith. Trial to a jury commenced on September 17, 1986. Following plaintiffs' opening statement, the trial court dismissed the fraud count. At the conclusion of the plaintiffs' case, the trial court granted the University's motion for directed verdict on the claim for breach of contract. The trial court submitted to the jury the claim for breach of the implied covenant of good faith and fair dealing in connection with Lindsey's employment contract. The jury awarded Lindsey $ 215,000 for deprivation of three years of employment and awarded an additional $ 480,000 for decrease in Lindsey's future earning capacity. This appeal followed.
The Arizona Court of Appeals affirmed the judgment of the trial court insofar as it awarded petitioners $ 215,000 for loss of employment for 3 years and insofar as it awarded petitioners an additional $ 91,312 for attorney's fees. However, it vacated the judgment of the trial court insofar as it awarded petitioners $ 480,000 for loss of future earning capacity. Id. at 1157-1158. OPINION Petitioners' Unreported *398 Income
The first issue for decision is whether the payment of $ 49,115 that petitioner received from the University of Arizona in 1983 is includable in petitioners' gross income. Petitioners contend that such amount constitutes "damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness" within the meaning of section 104(a)(2) and is not includable in gross income as provided in that section. Petitioners bear the burden of proving this contention. Rule 142(a), Tax Court Rules of Practice and Procedure.
In this case, petitioners must prove that the University of Arizona made the $ 49,115 payment in settlement of a "tort (or tort-type) claim". Sec. 1.104-1(c), Income Tax Regs; see United States v. Burke, 504 U.S.    , 112 S. Ct. 1867, 1870 (1992); Downey v. Commissioner, 97 T.C. 150, 160 (1991), adhered to on reconsideration 100 T.C.     (1993); Metzger v. Commissioner, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988). The most important *399 factor in determining whether the subject payment is excludable from gross income "is the intent of the payor as to the purpose in making the payment". Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Metzger v. Commissioner, supra at 847-848; Glynn v. Commissioner, 76 T.C. 116, 120 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). Petitioners allege that "the University and its supporters engaged in a campaign of vicious gossip and rumor in order to justify their firing of Lindsey." According to petitioners, because of the actions of the university, Mr. Lindsey and his family "suffered extreme emotional distress", and they required psychological counseling and therapy. They further allege that members of the Arizona State legislature pressured the university to compensate petitioner for the damage caused by the rumors. Finally, petitioners contend that the university made the subject payment of $ 49,115 to compensate Mr. Lindsey for the damages that he sustained. Respondent *400 does not take issue with petitioners' allegation that they sustained personal injury in the form of emotional distress at the time Mr. Lindsey was fired as head basketball coach by the University of Arizona. Respondent also does not contest petitioners' allegation that the personal injury suffered by petitioners was brought about by certain rumors that accompanied his firing. Nevertheless, respondent asserts that petitioners have failed to meet their burden of proof in this case. Respondent asserts that there is no evidence that the university was responsible for initiating or spreading derogatory rumors about petitioner, and there is no evidence that, in making the subject payment, the university accepted responsibility for any personal injury that petitioner and his family may have suffered. To the contrary, respondent alleges that the university made the subject payment as "severance pay" because of the unusual action that it took in firing petitioner after only 1 year as head basketball coach. We agree with respondent that petitioners have failed to meet their burden of proving that the subject payment constitutes damages received on account of personal injuries or sickness, *401 as required by section 104(a)(2). We agree with respondent's contention that the record contains substantial evidence that the university made the subject payment as "severance pay" and not in settlement of a personal injury claim. First, the letter written by the university's athletic director transmitting the subject payment to petitioner and petitioner's letter acknowledging receipt of the payment both refer to the payment as "severance pay". Second, the payment, which petitioner's letter describes as "the one year's severance pay", was equal to petitioner's annual base salary. Third, the university reported the payment to the Internal Revenue Service on Form 1099-MISC. The chief financial officer of the University of Arizona Foundation, which issued the checks, explained to an agent of the Internal Revenue Service that his organization presumed that the payment was made for services. Finally, the payment was described throughout the trial of petitioner's State court suit as "severance pay", and the Arizona court of appeals referred to the payment in Lindsey v. University of Arizona, 754 P.2d at 1155, as follows: The University gave Lindsey *402 two checks totalling $ 49,115 as severance pay, $ 1,890.98 of which was to pay for Lindsey's American Express balance.
We are not convinced by petitioner's argument that Dr. Dempsey's use of the term "severance pay" in his transmittal letter should be disregarded because it was Dr. Koffler, and not Dr. Dempsey, who was responsible for the decision to make the payment. In this regard, petitioner emphasizes that Dr. Koffler testified in the State court action that he "personally didn't call it severance pay at the time", but authorized the payment out of "human consideration". However, it appears that Dr. Koffler was stating his personal view of the matter and not necessarily his official view as president of the university. Dr. Koffler was aware of the fact that other officials of the university had used the term "severance pay", and there is nothing in the record to suggest that he disapproved of their use of that term. Indeed, Dr. Dempsey's letter and petitioner's acknowledgement suggest that there were one or more meetings during which severance pay was promised to petitioner. We are also not convinced that we should disregard petitioner's acknowledgement letter, which *403 refers to "the one year's severance pay". Petitioner argues that he was "only echoing Dempsey's words for purposes of identifying the letter he received" and that, as a nonlawyer, he was not versed in what the word "severance" might mean. Significantly, petitioner's letter was not addressed to Dr. Dempsey, but to another university official, Mr. Gary Munsinger. The fact that petitioner knew that his reference to "severance pay" would identify the subject of his letter to Mr. Munsinger makes it difficult to infer that, of the university officials involved, only Dr. Dempsey considered the money to be severance pay. Moreover, we do not find in the record of this case any evidence linking the subject payment of $ 49,115, either directly or by implication, to a personal injury tort claim asserted by petitioner against the university. In fact, to the contrary, petitioner's acknowledgement letter expressly states the opposite. In that letter, petitioner makes it clear that his acceptance of the subject payment: in no way is meant to satisfy my claim to damages as filed against the University, nor is it meant to be a settlement of any kind, and that I still retain my full rights *404 to bring litigation against the University concerning damages suffered by my family and I as a result of the University's sudden and unfair dismissal of me as Head Basketball Coach.
The above is a clear and unequivocal statement that the subject payment was not in settlement of any claim that petitioner might have had, either in tort or in contract, for damages on account of his dismissal as head basketball coach. In fact, as described in the findings of fact, petitioners subsequently sued the university in State court and raised a variety of tort and contract claims in that suit. Furthermore, we find nothing in the record to support petitioners' assertion, which was made for the first time in their reply brief, that the subject payment was made in return for petitioner's "verbal promise not to file a defamation claim against the university". Addition for Negligence
The second issue for decision is whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2). Petitioners bear the burden of proving that respondent's determination is wrong. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). *405 At the outset, we note that the notice of deficiency erroneously refers to the additions to tax under sections "6653(a)(1)(A)" and "6653(a)(1)(B)", provisions that did not become law until after the tax year in issue. See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1503(a), 100 Stat. 2085, 2742. We further note that attached to the notice of deficiency is a report of individual income tax examination changes that makes reference to "negligence penalty I.R.C. 6653(A)(1)" and "negligence penalty I.R.C. 6653(A)(2)." The correct provisions are section 6653(a)(1) and (2). Petitioners have not taken issue with respondent's determination of the additions to tax for negligence based upon the incorrect references in the notice of deficiency. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the entire underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest due on any part of the underpayment that is attributable to negligence or intentional disregard of rules or regulations. For purposes of section 6653(a), negligence is defined *406 as the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)); see Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Petitioners testified at the trial of this case that they suffered emotional distress for some period of time after Mr. Lindsey was fired by the university and that they required psychological counseling and therapy. Furthermore, in the aftermath of his firing, petitioners moved their residence three times over the course of 5 months. Under these circumstances, we accept petitioners' contention that their failure to include the $ 5,000 payment from Clossco-Adidas Shoe Co. and the interest payment of $ 230 from Arizona Bank was not due to negligence or intentional disregard of respondent's rules or regulations. We also accept petitioner's testimony that he disclosed receipt of the $ 49,115 payment from the University of Arizona to *407 the accountant who prepared their 1983 return. A taxpayer who makes full disclosure to an accountant or other qualified expert and reasonably relies on the expert's advice in good faith is not negligent. Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968). We believe, on the basis of petitioners' testimony, that they were not negligent in filing their 1983 return. Accordingly, we reject respondent's determination of the negligence additions under section 6653(a)(1) and (2). Addition for Substantial Understatement
The final issue for decision is whether petitioners are liable for the addition to tax under section 6661. Respondent determined that there was "a substantial understatement of income tax" on petitioners' 1983 return due to petitioners' failure to include three items in gross income: The $ 49,115 payment from the university, a payment of $ 5,000 from the Clossco-Adidas Shoe Co., and an interest payment of $ 230 from Arizona Bank. Sec. 6661(a). Section 6661 imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). *408 In the case of an individual, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1). Section 6661(c) provides that the Secretary may waive the penalty "on a showing by the taxpayer that there was reasonable cause for the understatement * * * and that the taxpayer acted in good faith." The Treasury Regulations promulgated under this statute state as follows: Reliance on an information return, professional advice, or other facts, however, would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * * [Sec. 1.6661-6(b), Income Tax Regs.]
As discussed above, we found that petitioners disclosed their receipt of the $ 49,115 payment to their accountant, and they were not negligent in failing to report that amount on their return. Based on that finding, we also reject respondent's determination of the addition to tax under section 6661(a) as to the $ 49,115 payment. See Vorsheck v. Commissioner, 933 F.2d 757 (9th Cir. 1991) (per *409 curiam), affg. and revg. an oral opinion of this Court. The $ 5,000 and the $ 230 understatements of income, by themselves, do not trigger the addition to tax under section 6661. Accordingly, we hold that petitioners are not liable for the addition to tax under section 6661. Upon consideration of the foregoing, Decision will be entered under Rule 155.